IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

AT KNOXVILLE

OCTOBER 1997 SESSION

FILED

January 8, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| STATE OF TENNESSEE, | * | C.C.A. # 03C01-9612-CR-00464 |
| Appellee, | * | Loudon County |
| VS. | * | Hon. E. Eugene Eblen, Judge |
| GRADY STANLEY INGRAM, | * | (Attempt to Commit Aggravated Child Abuse and Reckless Endangerment |
| Appellant. | * | with a Deadly Weapon) |

For Appellant:

A. Philip Lomonaco
Attorney
112 Durwood Drive
Knoxville, TN  37922

For Appellee:

John Knox Walkup
Attorney General and Reporter

Peter M. Coughlan
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN  37243-0493

Charles Hawk
District Attorney General
and Roger Delp
Assistant District Attorney General
P.O. Box 703
Kingston, TN  37763

OPINION FILED:_____

AFFIRMED

GARY R. WADE, JUDGE

## OPINION

The defendant, Grady Stanley Ingram, was indicted for aggravated child abuse, four counts of aggravated assault, and four counts of felony reckless endangerment. By plea agreement with the state, the defendant pled nolo contendere to one count of attempted aggravated child abuse, a Class B felony, and one count of felony reckless endangerment, a Class E felony. Range I sentences of eight years and one year respectively were ordered to be served consecutively. The trial court denied probation and ordered the sentences to be served in the Department of Correction.

In this appeal of right, the defendant insists that the trial court erred by denying an alternative sentence to prison. We find no error and affirm the judgment of the trial court.

At the sentencing hearing, it was established that on or about March 26, 1995, Stanley Drake Ingram, the infant son of the defendant, was found to be suffering from a skull fracture, intercranial hemorrhaging, bilateral retinal hemorrhaging, and two broken legs. During the hospital examination, the medical staff discovered a second, older cranial injury. The victim had been released from the hospital at 5:00 P.M. on the previous day after treatment on an unrelated matter and was returned at 3:00 A.M. on March 26. The injuries to the victim occurred during that time interval. The defendant was alone with the victim during the time the injuries occurred.

Medical testimony established that the head injuries were consistent with shaken baby syndrome and had caused a disabling brain injury to the victim. By the time the child was twenty-one months old, in August of 1996, doctors had

determined that the victim had a "striking ... amount of retardation"; because the child's mental development was approximately that of a one- to three-month-old infant, doctors predicted that the victim would not improve in the future and would require total "care for the rest of his life...." The victim is now in the custody of his grandparents.

On January 30, 1996, the defendant, who was intoxicated at the time, fired several shotgun blasts into a residence occupied by Paul, Alisa, Regina, and Philip Helton. The reckless endangerment conviction is based upon that incident.

When there is a challenge to the length, range, or manner of service of a sentence, it is the duty of this court to conduct a de novo review with a presumption that the determinations made by the trial court are correct. Tenn. Code Ann. § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence.

Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and the arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; State v. Smith, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

Among the factors applicable to the defendant's application for probation are the circumstances of the offense, the defendant's criminal record, social history, and present condition, and the deterrent effect upon and best interest of the defendant and the public. State v. Grear, 568 S.W.2d 285, 286 (Tenn. 1978).

Especially mitigated or standard offenders convicted of Class C, D, or E felonies are presumed to be favorable candidates "for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6). There is no such presumption for a Class B felon. Tenn. Code Ann. § 40-35-102(6). With certain statutory exceptions, none of which apply here, probation must be automatically considered by the trial court if the sentence for each conviction is eight years or less. Tenn. Code Ann. § 40-35-303(a), (b).

A sentence of split confinement involves the grant of probation after the partial service of a sentence. Tenn. Code Ann. § 40-35-306. It may include a jail or workhouse sentence of up to one year with the probationary term to extend for any period thereafter up to the statutory maximum for the offense. Id.

The purpose of the Community Corrections Act of 1985 was to provide an alternative means of punishment for "selected, nonviolent felony offenders in front-end community based alternatives to incarceration." Tenn. Code Ann. § 40-36-103. The Community Corrections sentence provides a desired degree of flexibility that may be both beneficial to the defendant yet serve legitimate societal aims. State v. Griffith, 787 S.W.2d 340, 342 (Tenn. 1990). That a defendant meets the minimum requirements of the Community Corrections Act of 1985, however, does not mean that he is entitled to be sentenced under the act as a matter of law or right. State v. Taylor, 744 S.W.2d 919 (Tenn. Crim. App. 1987). The following

4

offenders are eligible for Community Corrections:

> (1) Persons who, without this option, would be incarcerated in a correctional institution;
>
> (2) Persons who are convicted of property-related, or drug/alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 2 [repealed], parts 1-3 and 5-7 or title 39, chapter 13, parts 1-5;
>
> (3) Persons who are convicted of nonviolent felony offenses;
>
> (4) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;
>
> (5) Persons who do not demonstrate a present or past pattern of behavior indicating violence;
>
> (6) Persons who do not demonstrate a pattern of committing violent offenses; and
>
> (7) Persons who are sentenced to incarceration or on escape at the time of consideration will not be eligible.

Tenn. Code Ann. § 40-36-106(a).

The defendant, now thirty-two years of age, resides with his wife, Jerri, and another son, Trey. He attended Lenoir City High School and obtained a Graduate Equivalent Diploma from Pellissippi State Community College in October of 1992. The defendant has worked as a carpenter or laborer on a job-to-job basis.

The defendant testified that he had been an alcoholic since he was fifteen years old. He described the victim as having been born prematurely due to complications during the pregnancy of his wife and, prior to his head injuries, not nearly as active as his older child. Just prior to the March 26 incident, the victim had been hospitalized for approximately six days for a virus. Upon the family's return home from the hospital, the defendant, who claimed he "needed a drink bad," tried to get the victim to go to sleep and described the course of events as follows:

5

> When I was hopping up and down, I had my hand
> between his shoulder blades, instead of up against his
> head, supporting it up against me. And I know that's
> what did it. And I [am] going to have to live with that for
> the rest of my life. Just because I wanted a drink. I
> wanted ... him to go to sleep quick, so I could go get me
> a beer.

By the time of the sentencing hearing, the defendant had actively participated in Alcoholics Anonymous, undergone a five-day detoxification program and an intensive twenty-eight-day outpatient plan. He had been alcohol-free for seven months and had taken Antabuse as a means of deterring his desire for alcohol. The defendant had successfully completed a parenting program provided by Another Direction Programs, Inc.

The defendant had no recollection of the shooting incident other than waking up in jail. He testified that he had a toothache prior to that occurrence and had consumed two liters of Wild Turkey in less than four hours. He learned later that he had shot a gun in the neighborhood and struck the Heltons' residence.

The defendant, who testified that alcoholism "runs in my family [and e]verybody that drinks, dies with a beer in their hand," has a prior criminal history, all of which is alcohol-related. There have been several convictions for driving under the influence of alcohol, public drunkenness, and driving on a revoked license. The defendant has served several jail terms for these offenses. In denying any alternative sentence, the trial court placed particular emphasis on the nature and circumstances of the crime against the minor victim. Describing the injuries as "lifelong," the court ruled out both probation and split confinement. While acknowledging the defendant had made progress in his attempts at rehabilitation, the trial court expressed particular concern about the defendant's commission of the

second crime while he was on bail for the first.

Attempted aggravated child abuse qualifies as a violent, felony offense involving a crime against a person. See Tenn. Code Ann. § 40-36-106(a)(2), (3). In our view, the attempted aggravated child abuse conviction precludes consideration for the Community Corrections program. See State v. Birge, 792 S.W.2d 723, 725 (Tenn. Crim. App. 1990).

Even if the defendant had been eligible for Community Corrections, this court would have rejected the application on the same grounds as relied upon by the trial judge. The same is true regarding the request for immediate probation or a sentence of split confinement. Primary among the purposes of the Criminal Sentencing Reform Act of 1989 is the goal to punish a defendant "in relation to the seriousness of the offense." Tenn. Code Ann. § 40-35-102(1). Moreover, the defendant qualifies as having a lengthy history of criminal conduct. Tenn. Code Ann. § 40-35-102(3)(B). It is also significant that after being charged with aggravated child abuse, the defendant committed felony reckless endangerment.

In our view, an order of confinement in these circumstances is "necessary to avoid depreciating the seriousness of the offense...." Tenn. Code Ann. § 40-35-103(1)(B). One of the treating physicians described the injuries as follows:

> Drake Ingram has a developmental equivalent of a two to three month old at the present time [at age seventeen months]. He should be walking, ... he should be playing; he is unable to do any of these normal routine developmental acts. He is probably blind, or if not, has severe visual impairment.... [He] will never be the same. He will always be severely neurologically impaired. He will never have the chance to run with other children, to go to a regular school, and to be a regular "normal kid." The severity of the child's injury is enormous and the

7

neurologic impact cannot be reversed.

In summary, we defer to the presumptive correctness of the ruling of the trial court. The nature and circumstances of the offense and our concern that the grant of an alternative sentence would depreciate the seriousness of the crimes outweigh all other factors which might tend to suggest a more lenient sentence. Cf. State v. William Jerry McCord, No. 03C01-9501-CR-00014 (Tenn. Crim. App., at Knoxville, Nov. 29, 1995).

Accordingly, the judgment is affirmed.

_____
Gary R. Wade, Judge

CONCUR:

_____
David H. Welles, Judge

_____
Jerry L. Smith, Judge